CASE 50—PETITION ORDINARY—DECEMBER 1.

## Lyons, by Etc. v. Stratton.

APPEAL FROM HANCOCK CIRCUIT COURT.

1. SLANDER OF UNMARRIED WOMAN.—Where the reasonable and well understood effect of words spoken of and concerning an unmarried woman amount to the statement that she is unchaste the words are actionable *per se.*

EUGENE C. VANCE FOR APPELLANT.

1. The words spoken of and concerning the plaintiff were actionable in themselves, and were so intended by the defendant and so understood by the person to whom they were spoken; the words are not to be given the meaning which recognized lexicographers attach to them, but that meaning which is generally attached to them by the person who spoke them and the person to whom they were spoken. A. & E. Enc. of Law, vol. 13, pp. 460, 463, 464 and 465; Cosand v. Lee, 38 N. E. Reporter (Ind.), page 1099; Beswick v. Chapel, 8 B. M., 478.

MURRAY AND DUNCAN FOR APPELLEE.

1. An infant is required by the code to sue by his guardian, and if there be no guardian by next friend. The plaintiff in this case sued by her next friend without alleging that she has no guardian, and in the body of the pleading there is no allegation to show that the person designated in the caption as next friend has any interest in the infant.

2. The meaning of words can not be so extended as to change their import or to make certain that which is uncertain. 8 B. M., 486; Caldwell v. Abbey, Hardin 539; Ewell v. Snow, 13 Metcalf (Mass.), 278; 7 Blackford (Ind.), 117 and 377.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

This is an appeal from the Hancock Circuit Court from a judgment rendered in the suit of the appellants against the appellee. It seems to be conceded that the original petition was defective, and the question for decision is as to the sufficiency of the amended petition, to which a demurrer was sustained and the action dismissed, from which judgment appellants prosecute this appeal.

Said amended petition reads as follows: The said plaintiff, Laura Lyons, amends her petition herein and states, that she is an unmarried female sixteen years of age, and was up until the grievances hereinafter complained of a person of good repute for chastity in the neighborhood where she resides. That in said neighborhood to speak of and concerning an unmarried female the words, "She is set up

Lyons, by etc. v. Stratton.

for the winter," has a local and provincial meaning and implies, means and is generally understood that the person thus spoken of is in a family way and with child and has committed fornication.    And to speak of and concerning such said female in said neighborhood that "she is or will be knocked up," implies, means, and is generally understood that the person thus spoken of is in a family way and with child and has been guilty of the crime of fornication.    That well knowing the premises and wickedly intending to injure the said plaintiff, the said defendant did in said neighborhood on the ——— day of ———, 1894, and within one year before the filing of this action, in a certain discourse which defendant then had of and concerning the said Laura and of and concerning her said character for chastity, in the presence and hearing of divers persons, falsely and maliciously did speak and publish the following false and defamatory words, that is to say:  "She" (meaning said Laura), "is set up for the winter;" "she" (meaning said Laura), "had been told if she did not let Jim Terry alone she" (meaning said Laura) "would be knocked up and I" (meaning said defendant) "had been expecting it for some time;" meaning thereby to charge and he was so understood to mean by the persons, who heard him speak the said words, that she, said Laura, was in a family way and with child, and that she was and had been guilty of the crime of fornication.

Said plaintiff for further cause of action against said defendant states that she is an unmarried female sixteen years of age, and up until the happening of the grievances hereinafter complained of she was of good repute for chastity in the neighborhood where she resides.  That in that

neighborhood and in the neighborhood where the words hereinafter set out were spoken a local or provincial meaning is attached to the words "got her belly up," when spoken of and concerning an unmarried female, and that said words so spoken imply, mean and are generally understood by those who thus hear them spoken that the person thus spoken of is in a family way and with child and has committed the crime of fornication. That the defendant well knowing the premises and intending to wickedly injure the plaintiff in a certain discourse defendant on the ——— day of ———, 1894, and less than one year before the commencement of this action had of and concerning the said Laura, and of and concerning her reputation for chastity, in the presence and hearing of divers persons, falsely and maliciously did speak and publish the following false and defamatory words; that is to say: "Laura Lyons sent for George Spencer, and he got some condrums, and if she" (meaning plaintiff) "haint got her belly up she" (meaning plaintiff) "will have it if she don't watch;" thereby charging and intending to charge and was so understood by the persons who heard him speak at the time that the said Laura was and would be in a family way and with child and had committed the crime of fornication.

Further complaining said plaintiff states that she is an unmarried female sixteen years of age. That in the neighborhood where she resides and where the words were spoken as set out hereinafter the words "got her belly up," when spoken of an unmarried female have a provincial and local meaning and mean that the person thus spoken of is in a family way with child and by reason thereof had committed

the crime of fornication; and that the words, "I spoze," spoken in said localities mean by reason of said local and provincial meaning and custom "I suppose so." That well knowing the premises and wickedly intending to injure the said plaintiff the said defendant did on the —— day of November, 1894, in a certain discourse which he then had of and concerning the said plaintiff and of and concerning her character for chastity in the presence and hearing of divers persons falsely and maliciously did speak and publish the following false and defamatory words; that is to say: "Laura Lyons" (meaning plaintiff) "sent for George Spencer and he got some condrums and if Laura" (meaning plaintiff) "haint got her belly up she will have it if she don't watch;" and in a subsequent discourse, which defendant had with the same persons to whom he spoke the words last set out, on the —— day of ———, 1894, of and concerning the said plaintiff and of and concerning her character for chastity and of and in continuance of said last set out discourse said defendant in the presence and hearing of the said divers persons did falsely and maliciously speak and publish the following false and defamatory words; that is to say: "You know what I was telling you about Laura Lyons" (meaning plaintiff, and referring to the said defamatory words first set out in this paragraph), "well, I spoze it's so;" meaning thereby to charge, and he was so understood to charge and mean by the persons who heard him speak the words, that the said Laura Lyons had committed fornication and was then in a family way and with child.

Whereby the said plaintiff has been injured in her good name and reputation and by reason of said injuries has been

[21]

damaged in the full sum of one thousand dollars for which plaintiff demands judgment, and for all general and proper relief.

It is said in section 133 of Townsend on Slander: "Language is always to be regarded with reference to what has been its effect actual or presumed, and the sense to be arrived at with the help of the cause and occasion of its publication. The court or the jury is to place itself in the situation of the hearer or reader and determine the sense or meaning of the language in question according to its natural and popular construction. . . . The law can not be evaded by any of the artful and disguised modes in which men attempt to conceal the libelous or slanderous meaning, and the fact of language being ungrammatical, or such as is not usually found in any dictionary, will not suffice to prevent the law taking cognizance of such language or meaning it properly conveys."

In note 3 on page 178 it is said: "Words calculated to induce the hearers to suspect that plaintiff was guilty of the crimes alleged are actionable. It is not necessary that the words in terms should charge a crime. If such is the necessary inference, taking the words altogether and in their popular meaning, they are actionable."

In note 1, page 179, in Commonwealth v. Childs, 13 Pick., 198, it is said by Shaw, Chief Justice: "The court will regard the use of fictitious names and disguises in a libel in the sense that they are commonly understood. If therefore obscure and ambiguous language is used, or language which is figurative or ironical, courts and juries will understand it according to its true meaning and import; and the sense in

L. & N. R. R. v. Catron.

which it was intended is to be gathered from the context, and from all the facts and circumstances under which it was used."

It seems to us that upon authority, as well as the known meaning of the words charged in the amended petition to have been spoken by the appellee, that the reasonable and well understood effect of the words alleged to have been spoken clearly amounted to the statement that the plaintiff had been guilty of the offense of fornication, and that the same are actionable *per se*, and especially so as explained by the colloquium in the pleading. The words charged to have been spoken by the appellee, it seems to us could have no reasonable meaning except the intent to charge that the plaintiff was unchaste. It therefore results that the court erred in sustaining the demurrer to the amended petition.

The judgment appealed from is, therefore, reversed, and the cause remanded with directions to overrule the demurrer, and for proceedings consistent with this opinion.